# United States District Court
# Eastern District of New York

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 10 2004 ★

LONG ISLAND OFFICE

-----------------------------------x

BEVERLY S. BOND

              *Plaintiff,*

   -against-

THE TOWN BOARD OF THE TOWN OF TOWN OF EAST HAMPTON, THE ZONING BOARD OF THE TOWN OF EAST HAMPTON, THE PLANNING DEPARTMENT OF THE TOWN OF HAMPTON, STANLEY REDLUS, HEATHER ANDERSON, PHILIP GAMBLE, VALERIE SCORONE, JAY SCHNEIDERMAN, PETER VAN SCOYAC, CHARLES BUTLER, JOHN GROSSMAN, GARY DEAMARIO, LISA LIQUORI, JAMES CAVANAUGH, BRIAN FRANK, and JOHN DOES 1 THROUGH 20,

             *Defendants.*

-----------------------------------x

**ORIGINAL DOCUMENT**
not electronic
DOCKET NO. CV 00-228
HURLEY, J.
LINDSAY, M.J.

**REMAINING DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO FRCP RULE 56 <u>DISMISSING BALANCE OF PLAINTIFF'S COMPLAINT</u>**

GARY N. WEINTRAUB
*Special Town Attorney*
Attorney for Defendants
*Office & P.O. Address*
50 Elm Street
Huntington, New York 11743
*(631)* 421-2500

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT**..................................................................... 1

**STATEMENT OF FACTS**......................................................................... 2

## POINT I

Plaintiff was not denied equal protection based upon
any impermissible motive, the determinations herein
being based upon the beliefs of the ZBA members voting
thereon that they were acting in the best interests of the
Town of East Hampton............................................................................. 7

**CONCLUSION**........................................................................................ 13

## **PRELIMINARY STATEMENT**

The remaining defendants in this action, ostensibly brought pursuant to 42 USC §1983, now move this court pursuant to FRCP Rule 56 for summary judgment dismissing the balance of plaintiff's complaint. By decision and order dated July 23, 2002, this court granted in part and denied in part an application by all of the identifiable named defendants made pursuant to FRCP Rule 12b in this action for an order dismissing the complaint for failure to state a claim upon which relief can be granted. The motion was granted with respect to the claims against the Town Board of the Town of East Hampton, the Planning Department, Lisa Liquori, James Cavanaugh and Brian Frank (the latter three individuals being present or former staff employees), while it "kept alive," albeit barely, the claims against Stanley Redlus, Heather Anderson, Phillip Gamble, Valerie Scorone, Jay Schneiderman, Peter Van Scoyack, Charles Butler, and two other individuals named John Grossman and Gary DeAmario, the latter two names not corresponding to any known town employee. In said decision and order, this court, among other things, noted that "Plaintiff is the master of her complaint. She says her claims sound in equal protection." This court further noted that plaintiff, to establish her claim must show "some impermissible motive, rather than a merely irrational application of the law." That claim encompassed suggestions of selective enforcement supposedly arising out of the allegation that she was not a "local", and that there may have been "retaliation" arising out of her having filed an Article 78 proceeding challenging the first of two determinations of the defendant Zoning Board of Appeals ("ZBA").

## STATEMENT OF FACTS

Once again[1], plaintiff herein, in or about August of 1992, commenced the process by which she and her late husband sought municipal permits that would have permitted a substantial 1,606 square foot expansion of an existing residence located on a parcel of land on Sammy's Beach Road in East Hampton New York. The parcel in question has been recognized to be a highly constrained lot whose existing structure virtually touched critical wetlands. In order to accomplish her purpose, plaintiff required both a Natural Resources Special Permit as well as a variance of the applicable wetlands setback provisions of the East Hampton Town Zoning Code. After the pre-hearing process was complete, which included an environmental review by the Town's Planning Department, a public hearing on the application was held before the defendant ZBA on March 1, 1994, and was deemed closed on March 15, 1994. In a lengthy decision dated April 12, 1994, the defendant ZBA denied the application, with the members voting thereon[2] expressing their concern for the impact the proposed project would have "on the water quality of Three Mile Harbor," the said property being characterized in that decision as being "extremely constrained, having no elevations much more than six (6) ft. above the mean sea level and being comprised mostly of tidal wetlands."

An Article 78 proceeding was then filed challenging that determination in which the basis for the challenge, as set forth in the petition and supporting papers filed with the New York Supreme Court, was the allegation that the defendant ZBA had granted similar applications, and that as a consequence, its denial was "illegal, arbitrary, capricious, discriminatory, not related to the public safety, health or welfare, constituted an abuse of discretion, was without basis in law or fact, was outside the authority and jurisdiction of the Respondent Zoning Board of Appeals, held Petitioners to a higher standard than others similarly situated, and constituted an unconstitutional and illegal taking of a portion of Petitioners' property." No allegations were made to the effect that any municipal official or agency acted adversely towards plaintiff because

---

[1] Many of the factual statements contained herein were set forth in the then moving defendants' memorandum of law submitted in support of their motion made pursuant to FRCP Rule 12b. However, the statements, now made in the context of a motion for summary judgment pursuant to FRCP Rule 56, are supported by both documentary and testimonial evidence.

[2] Messrs. Redlus and Gamble, and Ms. Heather Anderson were the only members voting on the application. Of the three, only Mr. Gamble was a member of the defendant ZBA at the time of the second application by plaintiff to the ZBA with regard to her revised application.

of her alleged status of not being a "local," and indeed, no allegation *could* be made about "retaliation" for filing an Article 78 proceeding since prior to that time, no such proceeding had ever been filed by plaintiff.

In a decision dated July 7, 1995, Justice Lifson of the Supreme Court, Suffolk County[3], remanding the matter to the defendant Zoning Board in a determination noting that is was incumbent upon the defendant Zoning Board:

> "...to conform its decision upon petitioner's application to the others it has granted in the same area or to explain its reasons in detail for reaching a different result upon petitioner's application that it reached upon the other applications cited by petitioner."

Justice Lifson remitted the matter for "further proceedings not inconsistent" with his decision:

> "... to be scheduled with all deliberate speed, allowing for such notices or other requirements as may pertain under the Code or other applicable governing procedure."

No judgment with regard to that July 7, 1995 decision was signed until October 19, 1995, and once signed, the same was not served with notice of entry until April 18, 1996, some six (6) months later. Additionally, and at or about the time of Justice Lifson's July 1995 decision, plaintiff's husband had died, and, in her words, further proceedings before the defendant ZBA "was not on my mind."

Thereafter, a revised proposal, instead (and, in the words of plaintiff's then counsel, "in lieu") of the application that had been remanded by the state court, was ultimately submitted to the defendant ZBA that substantially reduced the size of the proposed addition. A new environmental review was conducted, and the Town's Planning Department also provided material distinguishing the other applications that plaintiff claimed to have been "similar" to hers. The Environmental Assessment Form Part II prepared and provided by the Town's

---

[3] Justice Lifson has since been appointed an Associate Justice of the Appellate Division, Second Judicial Department.

3

Planning Department, still set forth grave environmental concerns about the project because of its proximity to the wetlands, and accordingly, it recommended denial of the application.

A public hearing was then held on January 20, 1998 with regard to the new application, and in a lengthy decision dated March 3, 1998, the new application was denied. In its determination, which passed by a bare majority in a 3-2 vote, with two members dissenting and voting to approve the application,[4] the defendant ZBA took pains to distinguish the allegedly similar applications, while expressing again its concerns about the possible negative environmental impact the proposal would have. Another Article 78 proceeding then followed wherein basically the same allegations made in the first Article 78 proceeding as a basis for relief, were set forth therein. Again, not a word was said in that judicial proceeding about any possible "impermissible motive" behind the defendant ZBA's decision. In effect, all that was said was that the determination was based upon an irrational application of the law, a position that was adopted by the sate court.

In his decision dated December 8, 1998, Justice Lifson noted that (a) the defendant ZBA did in fact distinguish the other allegedly "similar" application, and that (b) the defendant ZBA (as well as the plaintiff) did have valid environmental concerns about the project. However, in annulling the defendant ZBA's March 3, 1998 determination and directing that the permits be granted, Justice Lifson held that as applied to the plaintiff herein, the environmental concerns of the defendant ZBA were "not supported by substantial evidence in the record" and therefore "was not rational." Justice Lifson found no constitutionally prohibited purpose behind the defendant ZBA's decision. The ZBA, as it was its right to do, took an appeal to the Appellate Division, Second Judicial Department, which court, in a brief decision and order dated May 30, 2000 affirmed Justice Lifson's determination, stating as the basis for its affirmance that the defendant ZBA's determination was "arbitrary and capricious and not supported by substantial evidence . . . ." As with the determination of Justice Lifson from which the appeal was taken, no constitutionally prohibited purpose behind the defendant ZBA's decision was stated by the Appellate Division.

---

[4] Messrs. Gamble and Butler were the dissenters. Mr. Gamble had voted against the first application in 1995. Mr. Butler was not a member of the ZBA in 1995. Nevertheless, and despite their votes supportive of plaintiff's application, they are continued as parties defendant in this action.

4

It was during the pendency of that appeal that the instant action was commenced. Subsequent to the affirmance by the Appellate Division, the defendant ZBA, obeying the mandate of the state courts, reconvened, and by decision dated July 27, 2000, voted unanimously to approve the revised application. Pertinent to the instant action and some of the remaining allegations herein, is the fact that the Appellate Division, in its decision and order of May 30, 2000, *specifically* determined that plaintiff herein "waived her right to seek approval of the original, more extensive, application by submitting a modified application to the ZBA for its consideration."

Prior to the making of this application for summary judgment, extensive depositions of both party and nonparty witnesses were taken over several days and encompassing over 2,000 pages of testimony. Not a single witness could provide evidence in admissible form that would even remotely suggest that plaintiff was treated differently because she allegedly was not a "local," or that there was retaliation because she had filed her initial Article 78 proceeding, or that there had been any impermissible motive behind the vote of any member of the defendant ZBA. All ZBA members who testified stated the reasons for his or her vote, including those members against whom plaintiff still seeks compensatory and punitive damages despite their votes in her favor. Everyone recognized that there were environmental concerns which motivated those who voted in the negative, and all those who were asked testified under oath that all applicants are treated the same, that the initiation of litigation has nothing to do with their votes, and that the status of an individual, be he or she a "local" or someone who is not a "local", never enters into their deliberations. Indeed, plaintiff herself, a member of the bar of this state and of this court, when asked during her deposition, testified:

> "I don't know why the Zoning Board treated me differently and as a *possibility* for looking at trying to fathom what happened over the years, I tried desperately to come up with things and one of the *possibilities* is that people who are local are treated differently than people who are not local or vice-a-versa..." [emphasis supplied].

5

Thus, it is established by plaintiff's own sworn testimony, that the underpinning of this litigation is surmise and conjecture about *possible* motives in allegedly treating "locals" differently than others. She further testified that:

> "It's. . . as I read this, it's not . . . the motives, it's the purposes. They used improper and discriminatory purposes against me."

When pressed to explain the basis for these amorphous "improper and discriminatory purposes", her answer was the alleged refusal of an attorney who represented the defendant ZBA in the state court proceedings to negotiate a settlement with her. She could not identify any individual in the Town of East Hampton who, as alleged in her complaint "predetermined" to treat her differently.

## POINT I

**PLAINTIFF WAS NOT DENIED EQUAL PROTECTION BASED UPON ANY IMPERMISSIBLE MOTIVE, THE DETERMINATIONS HEREIN BEING BASED UPON THE BELIEFS OF THE ZBA MEMBERS VOTING THEREON THAT THEY WERE ACTING IN THE BEST INTERESTS OF THE TOWN OF EAST HAMPTON.**

As this court has already noted, plaintiff is the maser of her own complaint. The gravamen of what remains of her complaint, after this court's decision and order of July 23, 2002, is, as stated by this court, the alleged denial to plaintiff of the equal protection of the law arising out of her claimed disparate treatment because she supposedly was not a "local", and the "selective" application of existing law to her. There is also a suggestion of alleged retaliatory conduct arising out of plaintiff having filed a state court proceeding in which a prior determination of the defendant ZBA was annulled and remitted to it for further proceedings.

Initially, one must ask whether or not there is any evidence in this case of any conduct by any of the remaining defendants wherein the "arbitrary and capricious" findings as to the determination of the majority of the ZBA by the state courts is so "outrageous" as to support a claim under 42 USC §1943 (*Natale v. Town of Ridefield*, 170 F.3d 258 [2nd Cir. 1999]). The reason for this inquiry is that the mere fact that an administrative board, such as the defendant ZBA herein, has been found to have exercised its discretionary functions in an imperfect manner, does not rise to the level of deprivation of a federally protected right (*Dean Tarry Corporation v. Friedlander*, 826 F.2d 210 [2nd Cir. 1987]). While *Natale* and *Friedlander* did not directly involve equal protection claims, they are nevertheless instructive when considering the alleged proscribed conduct claimed to have been engaged in by the members of the defendant ZBA, including those who voted *in favor* of the plaintiff. It should be clear that what is considered to be "irrational" in a state court sense necessary to overturn an administrative determination, is not necessarily the type of "irrational" conduct needed to sustain a denial of equal protection claim. Indeed, arbitrary or capricious governmental conduct is often

7


conduct in state court Article 78 review of administrative acts.[5] However, irrational governmental conduct must, in a constitutional sense, and in the context of an action brought under 42 USC §1983, be "egregious." (*County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1-43 [1988]).

In order for plaintiff to prevail on what essentially is a Fourteenth Amendment claim, she must now establish, as opposed to speculate, that as compared to others "similarly situated," she was (a) selectively treated; (b) that the claimed selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations such as race, religion, the intent to inhibit or punish the exercise of constitutional rights, or a malicious or bad faith intent to injure her (*Crowley v. Courville*, 76 F.3d 47 [2nd Cr. 1996]). As noted by Judge Mahoney writing for a unanimous panel in *Crowley*, a finding of arbitrary and irrational conduct (in the context of an action under 42 USC §1983), can only be made when government action was taken with no legitimate reason for its decision. At bar, even the plaintiff, in her sworn deposition testimony, acknowledged that there were environmental concerns about her application, a concern also judicially recognized in Justice Lifson's December 8, 1998 decision. Seemingly, then, plaintiff's case should end right here, for as often noted by the Supreme Court, in equal protection jurisprudence applying the "rational basis" test, the Fourteenth Amendment is not violated where the governmental action that is questioned rationally furthers an identified governmental purpose. (*Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 [2001]).

Recently, Judge Meskill, writing for yet another unanimous Second Circuit panel in *Harlen Associates v. Village of Mineola*, 273 F.3d 494 (2nd Cir. 2001), noted that a denial of equal protection claim arising out of a zoning board determination (and thus the

---

[5] CPLR 7803 sets forth the grounds for review of proceedings commenced pursuant to that Article. Nowhere to be found in that statute is the word "rational" or for that matter, the word "irrational" or the words "not rational." Nevertheless, practitioners of the "art" of Article 78, and the courts of New York have traditionally included those words as a ground for relief, equating them to the words "arbitrary and capricious" which are contained in the statute. (Cf. *Obunugafor v. N.Y. State Education Department*, 279 A.D.2d 738, 718 N.Y.S.2d 477 [3rd Dept. 2001]; *Matter of Crawmer v. Mills*, 239 A.D.2d 844, 657 N.Y.S.2d 533 [3rd Dept. 1997]; *Iza Land Management, Inc. v. Town of Clifton Park Zoning Board of Appeals*, 262 A.D.2d 760, 691 N.Y.S.2d 613 [3rd Dept. 1999]).

8

"constitutional" claim or irrationality) is negated where the Board "had legitimate interests which could rationally be furthered through the denial" of the application (*see also Crowley v. Courville*, *supra*). Further, and with respect to any claimed impermissible considerations entering into the Board's determination, plaintiff does not satisfy her burden by relating, as did the plaintiff in *Harlen Associates, supra*, "speculation and conjecture" with respect to the proffered bases for any claim of animus (273 F.3d at 503).

As to the basic allegation of selective treatment, it is important to note at this point that plaintiff alleges that she was treated differently than owners of "similar" property or property that was similar situated. Again, plaintiff is the master of her own complaint. In *Southview Associates v. Bongartz*, 980 F.2d 84 (2nd Cir. 1992), the Second Circuit, in rejecting plaintiff's equal protection claim, pointedly stated at 980 F.2d 102:

> "Southview's assertions regarding the treatment of other similar developments are more relevant to a claim of a denial of equal protection, rather than a violation of substantive due process. Nevertheless, if identically situated developments were granted permits, perhaps an inference of arbitrary or irrational conduct might arise. Southview, however, alleged only that 'similar residential developments' on '*essentially* identical' properties were granted permits (emphasis by the court).
>
> "Moreover, had Southview amended its complaint to allege that identically situated developments were granted permits, dismissal would still be required. If the Board had ' "at least debatable" ' grounds, Shelton, 780 F.2d at 483 (citing Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981)), for distinguishing its action on Southview's application from its conduct with respect to other subdivisions . . . ."

Nothing contained in the decision of Justice Lifson, the Appellate Division, or the deposition of the plaintiff is inconsistent with the fact that the defendant ZBA had at least "debatable" grounds to deny plaintiff's application. In fact, all of the above is consistent with the existence of said grounds.

It is an ancient principle of the common law that each parcel of real property is considered to be "unique" (*EMF General Contracting Corp. v. Bisbee* ___A.D.2d ___, 774 N.Y.S.2d 39 [1st Dept. 2004]), and as such, plaintiff's property could not be

considered "essentially identical" to others so as to arguably state an equal protection claim as defined by the Circuit Court in *Southview Associates, supra*. Moreover, the incontrovertible evidence now before this court establishes that the defendant ZBA did adequately distinguish its determinations in other matters from the determinations in plaintiff's two different applications. Indeed, the evidence shows that in some of the "suspect" applications that plaintiff claims received more favorable treatment than hers, wetlands set-back variances were either not required or were less than what plaintiff sought. In effect, the evidence shows that plaintiff's parcel was perhaps the most environmentally constrained of all of the parcels referenced in this litigation. As stated by Judge Spatt of this court, in an equal protection claim such as the one advanced at bar, "apples should be compared to apples." (***Equus Associates Ltd. v. Town of Southampton***, 37 F.Supp. 2d 582, 598 [E.D.N.Y. 1999]). Plaintiff cannot point to a single parcel as environmentally constrained as hers wherein the scope of the relief she sought from the defendant ZBA was granted[6], and even if she could, that the "difference" in treatment was driven by some proscribed discriminatory or malicious reason.

Apart from the foregoing, the evidence before this court shows that other allegedly "similar" properties *also* were denied permits that would have permitted expansions of existing structures on environmentally constrained property, a fact that likewise negates the "selective treatment" aspect of plaintiff's equal protection claim (*Cf. **X-Men Security, Inc. v. Pataki***, 196 F.3d 56, 72 [2nd Cir. 1999]).

At bar, plaintiff seemingly is of the belief, despite the plethora of cases to the contrary, that all she need do to prove an equal protection claim is show that she was in fact treated differently, a position that has been rejected by the Second Circuit in ***Zahra v. Town of Southold***, 48 F.3d 674 (2nd Cir. 1996). There, as here, the claim is that plaintiff was treated "differently." The court stated at 48 F.3d 683-684:

---

[6] The "closest" parcel to hers was the *Phillips* parcel wherein an application for similar, albeit not as extensive relief, was granted approximately ten (10) years prior to plaintiff's second application. As explained by the defendant ZBA, *Phillips* was, in effect, a mistake, since it was decided "before a thorough understanding of the detrimental effects of septic effluent of the environment was known . . . ." The clear implication was that had *Phillips* come before the defendant ZBA in 1998 instead of 1987, the application would have been denied.

10

> "Upon reviewing the record and considering the evidence in the light most favorable to [plaintiff], we conclude that [plaintiff] failed to establish an equal protection violation adequate to survive defendants' motion for judgment as a matter of law. The flaw in [plaintiff's] equal protection claim is that Zahra assumes that to prevail he need only prove that he was treated differently from others. Our precedents, however, have firmly established that "equal protection does not require that all evils of the same genus be eradicated or none at all." LeClair, 627 F.2d at 608 (citing Railway Express Agency, Inc. v. New York, 336 U.S. 106, 109-10, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949)). Rather, to sustain his equal protection claim based on the alleged selective enforcement of the Town Code, Zahra must satisfy both prongs of the test stated above.

> "[Plaintiff] has submitted evidence suggesting that he was the only person in the Town charged with the violations in question. Even were we to assume, arguendo, that [plaintiff] established a genuine factual dispute as to the "selective treatment" prong of the above test in light of this evidence, the record nonetheless indicates that [plaintiff] failed to proffer sufficient evidence to meet the demands of the second prong. Because [plaintiff] never alleged that he was issued the subject violations because of his race, religion, or to prevent him from exercising a constitutional right, we review the record for evidence of a malicious or bad faith intent to injure. See, e.g., FSK Drug, 960 F.2d at 10; LeClair, 627 F.2d at 610. We find the evidence of this insufficient as a matter of law."

Concededly, in the instant case, plaintiff has *alleged* that she was treated differently, speculating that this occurred *perhaps* because she allegedly was not a "local". It is urged that while such suggestions and conjecture may have sufficed to survive a motion pursuant to FRCP Rule 12b, they are not sufficient to survive a motion made pursuant to FRCP Rule 56.

At bar, the sole reason why the state courts ruled as they did is as set forth in their decisions. Justice Lifson (as did the plaintiff herself) recognized the legitimate interest of the Town of East Hampton in protecting its wetlands. Justice Lifson also accepted the defendant Zoning Board's distinguishing of other applications alleged to have been similar. However, Justice Lifson held that the lack of rationality to the defendant ZBA's [majority] decision was founded upon the lack of substantial evidence supporting the expressed concerns of the defendant ZBA. Nothing therein suggests any invidious

motivation of the Board members who voted with the majority. The Appellate Division's affirmance makes no reference to the word "rational", stating "synonymously" that the determination under review was not supported by substantial evidence, and was therefore "arbitrary and capricious" so that the ZBA had, as a consequence, failed to satisfy the "balancing test" required of it pursuant to the amended §267-b of the New York Town Law as explained by New York's highest court in *Sasso v. Osgood*, 86 N.Y.2d 374, 633 N.Y.S.2d 259 (1995).

At best, then, from plaintiff's point of view, the defendant ZBA, and in particular, the three members who voted against her revised application in 1998, were found to have imperfectly applied applicable state law. Again, no finding was ever made that there was any improper motive behind the votes of those three members, nor for that matter, was there even a hint of animus behind those votes. As to the allegation that denial of her second and revised application may have been retaliatory, or to punish her for having previously filed an Article 78 proceeding, this court is respectfully reminded of the fact that the *only* member of the Board in *1998* who was also a member of the *1995* Board (whose decision was the subject of the initial Article 78 proceeding), was and is Philip Gamble, the Board's present Chairman, and *he voted for the application* in 1998.

## **CONCLUSION**

**SUMMARY JUDGMENT SHOULD B GRANTED TO THE REMAINING DEFENDANTS DISMISSING WHAT REMAINS OF PLAINTIFF'S COMPLAINT.**

Respectfully submitted,

**GARY N. WEINTRAUB**
*Special Town Attorney*
Attorney for Defendants
*Office & P.O. Address*
50 Elm Street
Huntington, New York 11743
(*631*) 421-2500

_____
Gary N. Weintraub (GNW 8228)

**Affidavit of Service**

**State of New York)**
                    ss.:
**County of Suffolk)**

    Linda J. Clark, being duly sworn, deposes and says; I am not a party to this action, am over the age of 18 years and reside at Kings Park, New York 11754. On June 3, 2004 deponent served the within **Remaining Defendants' Memorandum of Law in Support of Motion pursuant to FRCP Rule 56 Dismissing Balance of Plaintiff's Complaint** by depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

        **Stumpp & Bond, attorneys for plaintiff**
        170 Broadway, Suite 608
        New York, NY 10038

                                      _____
                                          Linda J. Clark

Sworn to before me this
3rd day of June, 2004.

_____
Notary Public
GARY N. WEINTRAUB
Notary Public, State of New York
No. 02WE4200527
Qualified in Suffolk County
Commission Expires August 31, 20 _01_