FILED
IN CLERK'S OFFICE
U S. DISTRICT COURT E.D.N.Y.

★   AUG 1 0 2004   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
BEVERLY S. BOND,                        :
                                        :
                        Plaintiff,      :    00 Civ. 0228
                                        :
            -against-                   :    HURLEY, J.
                                        :    LINDSAY, M.J.
                                        :
THE TOWN BOARD OF THE TOWN              :
OF EAST HAMPTON, THE ZONING             :
BOARD OF THE TOWN OF EAST HAMPTON,      :
THE PLANNING DEPARTMENT OF THE          :    **ORIGINAL DOCUMENT**
TOWN OF EAST HAMPTON, STANLEY           :    **not electronic**
REDLUS, HEATHER ANDERSON,               :
PHILLIP GAMBLE, VALERIE SCORONE,        :
JAY SCHNEIDERMAN, PETER VAN SCOYAC,     :
CHARLES BUTLER, JOHN GROSSMAN,          :
GARY DEAMARIO, LISA LIQUORI,            :
JAMES CAVANAUGH, BRIAN FRANK, and       :
JOHN DOES 1 THROUGH 20,                 :
                                        :
                        Defendants.     :
                                        :
----------------------------------------X


MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>


ORAL ARGUMENT
REQUESTED

STUMPP & BOND, LLP
Attorneys for Plaintiff
  Beverly S. Bond
170 Broadway, Suite 608
New York, New York  10038
Telephone: (212) 406-2300

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . .     ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . .     1

Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . .     2

    I.    The Prior State Court Holdings Conclusively
        Establish The Elements Of Plaintiff's Equal
        Protection Claim . . . . . . . . . . . . . . . .     3

    II.   The Prior State Court Holdings Are Controlling
        and Are Dispositive of Defendants' Liability . .     4

        A.    Federal Statute Mandates Full Faith and
              Credit be Given to the Prior Holdings.     5

        B.    New York Rules of Preclusion
              Bar Re-Litigation. . . . . . . . . .     6

        C.    Rooker-Feldman Bars Re-Litigation. . .     7

   III. The Prior State Court Holdings Establish
        Defendants' "Class of One" Liability . . . . . .     9

        A.    Plaintiff Was Similarly Situated . . .     9

        B.    Plaintiff Was Intentionally
              Treated Differently. . . . . . . . .     10

        C.    Defendants' Actions Lacked Any
              "Rational Basis" . . . . . . . . . .     11

   IV. The Prior State Court Holdings and Discovery
        Establish Defendants' "Traditional"
        and "Selective Enforcement" Liability . . . . . .     14

        A.    Plaintiff Was Similarly Situated and
              Intentionally Treated Differently. . .     15

        B.    Defendants Had an Impermissible Purpose     15

            1.    Defendants' Contempt of the
                Remand Order. . . . . . . . . .     16

            2.    Defendants' Demand that Plaintiff
                Drop Her Administrative Appeal. .     17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . .     20

## TABLE OF AUTHORITIES

### Cases

Bond v. Zoning Board of Appeals of the Town of East
Hampton, Index No. 94-10194 (N.Y. Sup. Ct., July 7,
1995), after remand, Index Nos. 94-10194 and 98-7512
(N.Y. Sup. Ct., Dec. 8, 1998), aff'd, 272 A.D.2d
612 (2d Dept. 2000). . . . . . . . . . . . . . . . . . . passim

Board of Education of Plainedge v. Connecticut General
Life Ins. Co., 2004 U.S. Dist. LEXIS 5272 (E.D.N.Y.
2004). . . . . . . . . . . . . . . . . . . . . . . . . .    3

Carlen v. Department of Health Services, 1996 U.S. App.
LEXIS 25241 (2d Cir. 1996) . . . . . . . . . . . . . . .    6

City of Cleburne v. Cleburne Living Center.,
473 U.S. 432 (1985). . . . . . . . . . . . . . . . . . .    3

Cobb v. Pozzi, 2003 U.S. App. LEXIS 24885
(2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . .    4

Colton v. Berman, 21 N.Y.2d 322 (1967) . . . . . . . . . 12-13

Crowley v. Courville, 76 F.3d 47 (2d Cir. 1996). . . . . .   4

D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). . .   8

Dougherty v. North Hempstead Board of Zoning,
282 F.3d 83 (2d Cir. 2002) . . . . . . . . . . . . . . .   15

Expert Electric, Inc. v. Levine, 554 F.2d 1227
(2d Cir.), cert denied, 434 U.S. 903 (1977). . . . . . .    7

Garden City Center Associates v. Village of Garden City,
1999 U.S. App. LEXIS 20216 (2d Cir. 1999). . . . . . . .    6

Hansel v. Brazell, 85 Fed. Appx. 237 (2d Cir. 2004). . . .   3

Harlen Associates v. Village of Mineola,
273 F.3d 494 (2d Cir. 2001). . . . . . . . . . . . . . . 3-4,12

Harrison v. Springdale Water & Sewer Commission
780 F.2d 1422 (8th Cir. 1986). . . . . . . . . . . . . .    5

Highland Brooks Apartments, Inc. v. White,
40 A.D.2d 178 (4th Dept. 1972) . . . . . . . . . . . . .   14

Hines v. City of Buffalo, 79 A.D.2d 218 (4th Dept. 1981). .   7

- ii -

_Johnson Co. v. Wharton_, 152 U.S. 252 (1893) . . . . . . . .    2

_Kropelnicki v. Siegel_, 290 F.3d 118 (2d Cir. 2002) . . . .    7-8

_Leebaert v. Harrington_, 332 F.3d 134 (2d Cir. 2003) . . . .    15

_Massachusetts Board of Retirement v. Murgia_, 427 U.S.
307 (1976) . . . . . . . . . . . . . . . . . . . . . . . .    15

_McCain v. Dinkins_, 84 N.Y.2d 216 (1994) . . . . . . . . .    16

_Migra v. Warren City School District Board of Education_,
465 U.S. 75 (1984) . . . . . . . . . . . . . . . . . . . .    5-6

_Moccio v. New York State Office of Court Administration_,
95 F.3d 195 (2d Cir 1996) . . . . . . . . . . . . . . . . .    7-8

_O'Brien v. City of Syracuse_, 54 N.Y.2d 353 (1981) . . . . .    7

_O'Connell v. Corcoran_, 2003 N.Y. LEXIS 3946 (N.Y. 2003) . .    6

_Pell v. Board of Education_, 34 N.Y.2d 222 (1974) . . . . .    12-14

_Purdy v. Kreisberg_, 47 N.Y.2d 354 (1979) . . . . . . . . .    12

_Restgouche, Inc. v. Town of Jupiter_, 59 F.3d 1208
(11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . .    9

_Robbins v. District Court of Worth County_, 592 F.2d
1015 (8th Cir.), _cert. denied_, 444 U.S. 852 (1979) . . . .    5

_Rooker v. Fidelity Trust Co._, 263 U.S. 413 (1923) . . . . .    7

_Santini v. Connecticut Hazardous Waste Management_,
342 F.3d 118 (2d Cir. 2003) . . . . . . . . . . . . . . . .    8

_Sullivan County Harness Racing Assn. v. Glasser_,
30 N.Y.2d 269 (1972) . . . . . . . . . . . . . . . . . . .    12

_300 Gramatan Ave. Associates v. State Division of
Human Rights_, 45 N.Y.2d 176 (1978) . . . . . . . . . . . .    12

_Tufano v. Alpert_, 968 F. Supp. 112 (E.D.N.Y. 1997) . . . .    8

_Ulysses I & Co. v. Morton_, 2001 U.S. App. LEXIS 7195
(2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . .    8

_Village of Euclid v. Amblec Realty Co._,
272 U.S. 365 (1926) . . . . . . . . . . . . . . . . . . . .    12

_Village of Willowbrook v. Olech_, 528 U.S. 562 (2000) . . .    3

<u>Woodlawn Veteran's Mutual Housing, Inc. v. New York</u>
<u>Department of Housing & Community Renewal</u>, 159 Misc.
2d 639 (Sup. Ct. 1993), <u>aff'd</u>, 210 A.D.2d 149 (1st
Dept. 1994) . . . . . . . . . . . . . . . . . . . . .   14

<u>Wright v. Coughlin</u>, 1987 U.S. Dist. LEXIS 10121
(S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . .   7


**Statutes and Rules**

28 U.S.C. §1738 . . . . . . . . . . . . . . . . . . . 5-6,9

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . passim

Federal Rules of Civil Procedure, Rule 56 . . . . . . . 1, 3

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Beverly S. Bond submits this Memorandum of Law in support of her Motion for Summary Judgment as to liability against the remaining Defendants (i.e., the Zoning Board of the Town of East Hampton, Stanley Redlus, Heather Anderson, Phillip Gamble, Valerie Scorone, Jay Schneiderman, Peter Van Scoyac, Charles Butler, John Gosman, and Gary Deamario (collectively, "Defendants")).[1]  For the reasons set forth below, Plaintiff's motion should be granted.

## PRELIMINARY STATEMENT

Following 8 years of litigation in the New York State courts, this federal action was commenced 4 years ago, pursuant to 42 U.S.C. §1983 ("§1983"), seeking redress for Defendants' continued violation of Plaintiff's right to equal protection under the Fourteenth Amendment.[2]  In that prior litigation, the New York State courts held that: (1) Plaintiff was similarly situated to others who were granted similar or greater zoning relief in her neighborhood; (2) Defendants intentionally treated Plaintiff differently by denying her the zoning relief she requested; and (3) Defendants had no rational basis for such difference in treatment.

---

[1]    Pursuant to Local Civil Rule 56.1, annexed to the Notice of Motion is Plaintiff's statement of undisputed material facts (referred to herein as "UF__"), and the Affidavit of Adam M. Bond, Esq. in Support of Plaintiff's Motion for Summary Judgment, sworn to on June 3, 2004 (the "Bond Aff.").

[2]    This Court already has held that: (a) Plaintiff has properly asserted a claim for violation of equal protection under each of the "class of one," "traditional," and "selective enforcement" theories; and (b) contrary to Defendants' assertions, Plaintiff did not assert a due process claim. See Memorandum Opinion and Order of Hon. Denis R. Hurley, dated July 23, 2002 ("Mem. Ord."), attached as Ex. A to the Bond Aff., at 3-4.

See Bond v. Zoning Board of Appeals of the Town of East Hampton, Index No. 94-10194 (N.Y. Sup. Ct., July 7, 1995) ("Bond I"), after remand, Index Nos. 94-10194 and 98-7512 (N.Y. Sup. Ct., Dec. 8, 1998) ("Bond II"), aff'd, 272 A.D.2d 612 (2d Dept. 2000) ("Bond III") (copies are attached as Exhibits B - D to the Bond Aff.).

Defendants are legally precluded from re-litigating those prior holdings[3] -- and this Court, respectfully, is without subject matter jurisdiction to consider such re-litigation.  Accordingly, Plaintiff is entitled to summary judgment as to liability.

### FACTS

The previous factual determinations and undisputed facts relevant to this motion are set forth in greater detail in UF 1-87, and will be referenced as relevant to the arguments herein.[4]

### ARGUMENT

More than a century ago, the United States Supreme Court held that "matters distinctly put in issue and determined by a court of competent jurisdiction as to parties and subject matter, shall not be retried between the same parties in any subsequent suit in any court." Johnson Co. v. Wharton, 152 U.S. 252, 256 (1893)  Thus, since the legal and factual bases relating to Defendants' liability here already have been determined in the prior State court proceedings, summary judgment must be granted to

---

[3]   This Court previously acknowledged the "possibility that Plaintiff could employ collateral estoppel ... to support ... a summary judgment motion."  (Mem. Ord. at 11, n.4).

[4]   For a general description of Plaintiff's property, see UF 1-10.

2

Plaintiff as to liability, since "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." See FRCP Rule 56; see, e.g., Board of Education of Plainedge v. Connecticut General Life Ins. Co., 2004 U.S. Dist. LEXIS 5272 (E.D.N.Y. 2004, Hurley, J.)

## I. THE PRIOR STATE COURT HOLDINGS CONCLUSIVELY ESTABLISH THE ELEMENTS OF PLAINTIFF'S EQUAL PROTECTION CLAIM

The constitutional right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Here, Plaintiff has presented three distinct and independent theories of liability -- which already have been established in the prior State court proceedings and prove Defendants' violative conduct -- namely: "class of one"; "traditional"; and "selective enforcement."

To succeed in a "class of one" equal protection claim under 42 U.S.C. §1983, the United States Supreme Court has held in an analogous zoning case that Plaintiff must prove "that she has been intentionally treated differently from others similarly situated, and that there [was] no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).[5] See also Hansel v. Brazell, 85 Fed. Appx. 237, 238 (2d Cir. 2004); Harlen Associates v. Village of Mineola, 273 F.3d 494,

---

[5]    Defendants' liability also exists where their actions involve "reckless or callous indifference to the federally protected rights of others." (Mem. Ord. at 14).    The record demonstrates that Defendants acted intentionally, as well as with "reckless or callous indifference" to Plaintiff's rights.

499 (2d Cir. 2001); <u>Crowley v. Courville</u>, 76 F.3d 47, 52-53 (2d Cir. 1996).   Similarly, in the "traditional" and "selective enforcement" theories also properly asserted by Plaintiff (<u>see</u> Mem. Ord. at 10), she must show that she was similarly situated but treated differently; however, rather than the lack of "rational basis" (as in her "class of one" claim), she must instead show that Defendants had an "impermissible purpose," such as to inhibit or punish her exercise of a constitutional right. (<u>See</u>, <u>e.g.</u>, <u>Harlen Associates</u>, <u>supra</u>, 273 F.3d at 499)[6]

Since the three necessary elements of Plaintiff's "class of one" equal protection claim were established in the prior State court holdings, and since this Court respectfully must abide by such holdings (<u>see</u> Point II, <u>infra</u>), Defendants are liable for violating Plaintiff's right to equal protection.   Quite simply, Defendants are not entitled to a <u>fourth</u> opportunity to argue that a "rational basis" existed for their actions.   Accordingly, the prior State court holdings entitle Plaintiff to summary judgment against Defendants as to liability.

## II. THE PRIOR STATE COURT HOLDINGS ARE CONTROLLING AND ARE DISPOSITIVE OF DEFENDANTS' LIABILITY

The facts establishing Defendants' liability under §1983 already have been litigated to conclusion, and are set forth in the

---

[6] It should be noted that Plaintiff's "class of one" claim is <u>not</u> dependent on her ability to prove that she was treated differently "for an impermissible reason."   Rather, under <u>Olech</u>, <u>supra</u>, 528 U.S. 562, she only must show that she was "treated differently from similarly situated [individuals]... and that there was 'no rational basis for the difference in treatment.'"   <u>Cobb v. Pozzi</u>, 2003 U.S. App. LEXIS 24885, at *55-57 (2d Cir. 2003).

4

State court determinations in <u>Bond I-III</u>. (UF 32-43, 63-86)  On at least three separate bases, the law is clear that this Court may not now allow re-litigation of such determinations, since:  (a) 28 U.S.C. §1738 expressly mandates that full faith and credit be accorded such determinations; (b) the New York rules of preclusion bar Defendants from contesting such determinations; and (c) the Rooker-Feldman doctrine deprives this Court of subject matter jurisdiction to modify or reverse such determinations.

## A.    Federal Statute Mandates Full Faith and Credit be Given to the Prior Holdings

28 U.S.C. §1738 states, in relevant part, that State court proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State."[7] As applied here, the statute mandates that in a subsequent §1983 action, State court determinations receive the same claim-preclusive effect as to federal issues the litigant could have raised in the earlier State court proceeding, as they have to issues actually litigated. <u>See Migra v. Warren City School District Board of Education</u>, 465 U.S. 75 (1984).  Inasmuch as the State courts already have held that Defendants treated Plaintiff differently than others similarly situated, without a rational basis (UF 32-43, 65-86), those

---

[7]    Section 1738 also applies to §1983 actions. <u>See</u> <u>Harrison v. Springdale Water & Sewer Commission</u>, 780 F.2d 1422 (8th Cir. 1986) (§1983 claims not exempted from the statutory requirements of 28 U.S.C. §1738). <u>Robbins v. District Court of Worth County</u>, 592 F.2d 1015 (8th Cir.), <u>cert.</u> <u>denied</u>, 444 U.S. 852 (1979) (§1983 presents no categorical bar to the doctrines of claim and issue preclusion).

holdings must be given full faith and credit here.

**B.   New York Rules of Preclusion Bar Re-Litigation[8]**

In the context of New York Article 78 proceedings -- as involved here -- the Second Circuit has held:

> "Although it is well settled in this Circuit that an Article 78 proceeding in a New York State Court may not bar a subsequent §1983 suit by res judicata (because damages for civil rights violations are not available in Article 78 proceedings). . . individual issues actually and necessarily decided in the Article 78 proceeding may be precluded by collateral estoppel in subsequent §1983 actions. . . ."

Garden City Center Associates v. Village of Garden City, 1999 U.S. App. LEXIS 20216, at *8, n.1 (2d. Cir. 1999) (citations omitted).

Indeed, where the parties, the issues, and the causes of action in an Article 78 proceeding are "substantially identical" to those in an equal protection claim -- as they are here[9] -- then res judicata precludes re-litigation of a claim or defense where there exists a final determination in former litigation.   O'Connell v.

---

[8]   The New York rules of preclusion govern here, since "the precise preclusive effect of a New York judgment in a subsequent federal action must be determined in accordance with New York law." Carlen v. Department of Health Services, 1996 U.S. App. LEXIS 25241, at *3 (2d Cir. 1996); see also 28 U.S.C. §1738; Migra, supra, 465 U.S. at 81.

[9]   For example, Plaintiff argued in the State courts that Defendants' "decision to deny [Plaintiff's] application is arbitrary, capricious, and unsupported by substantial evidence in the record," and that their actions served to "deny [Plaintiff] the equal protection of the law, in that [Plaintiff] and [her] property [were] treated differently than others similarly situated..." (See Plaintiff's Verified Reply in Bond II, dated August 18, 1998, attached as Ex. E to the Bond Aff., at ¶54)   Thus, the elements of Plaintiff's equal protection claim (other than damages) were placed squarely in issue, litigated, and determined in Plaintiff's favor, and now, respectfully, must be followed by this Court.

6

Corcoran, 2003 N.Y. LEXIS 3946 (N.Y. 2003).[10]  Similarly,
collateral estoppel applies where the issues involved were "decided
in a prior action," and there was "a full and fair opportunity to
contest the decision now said to be controlling."  Wright v.
Coughlin, 1987 U.S. Dist. LEXIS 10121, at *3-4 (S.D.N.Y. 1987); see
also Hines v. City of Buffalo, 79 A.D.2d 218 (3d Dept. 1981)  Since
there can be no serious question that the liability issues to be
resolved by any trial in this action already have been decided in
the prior holdings, Plaintiff is entitled to summary judgment as a
matter of res judicata and collateral estoppel under New York law.

## C.    Rooker-Feldman Bars Re-Litigation

        "[U]nder the Rooker-Feldman doctrine, lower federal
courts lack subject matter jurisdiction over claims that
effectively challenge State court judgments."[11]  Kropelnicki v.
Siegel, 290 F.3d 118, 128 (2d Cir. 2002); see also Moccio v. New
York State Office of Court Administration, 95 F.3d 195 at 198 (2d
Cir. 1996).  See generally Rooker v. Fidelity Trust Co., 263 U.S.

---

[10]    Thus, under New York's "transactional identity" approach
to res judicata -- which hinges on the issues actually litigated in
the prior action (see O'Brien v. City of Syracuse, 54 N.Y.2d 353,
354 (1981)), or the "factual predicate" of the claims asserted (see
Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1234 (2d Cir.),
cert denied, 434 U.S. 903 (1977)) -- it is clear that the factual
bases for Plaintiff's claim here are established by res judicata.
"[I]t is the facts surrounding the transaction or occurrence which
operate to constitute the cause of action, not the legal theory
upon which the litigant relies." (Id.)

[11]    Notably, Defendants have specifically acknowledged that
they "are not asking this Court to review or impair the
determinations of a State court." See letter from Gary Weintraub,
Esq. to Hon. Denis R. Hurley, dated March 4, 2004, attached as Ex.
F to the Bond Aff.

413 (1923), and <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). This doctrine applies to claims actually litigated, as well as to those "inextricably intertwined with State court determinations." <u>Kropelnicki</u>, <u>supra</u>, 290 F.3d at 128. Indeed, the Second Circuit has interpreted "inextricably intertwined" to include situations where -- as here -- a federal party "had an opportunity to litigate a claim in a state proceeding," then "subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion." <u>Moccio</u>, <u>supra</u>, 95 F.3d at 199-200; <u>see also</u> <u>Santini v. Connecticut Hazardous Waste Management</u>, 342 F.3d. 118, 126 (2d Cir. 2003)[12]

This Court has recognized that it is "without subject matter jurisdiction" over an action "in essence seeking a reversal of the decisions of a State court," because under Rooker-Feldman, "Federal courts 'do not have' jurisdiction... over challenges to state-court decisions ..." <u>Tufano v. Alpert</u>, 968 F. Supp. 112, 113-114 (E.D.N.Y. 1997). Thus, this Court cannot properly allow Defendants to re-litigate the prior State court holdings, in violation of both Federal law and the New York rules of preclusion. See <u>Ulysses I & Co. v. Morton</u>, 2001 U.S. App. LEXIS 7195 (2d Cir. 2001) (affirming Judge Hurley's dismissal of certain claims as barred under Rooker-Feldman); <u>Moccio</u>, <u>supra</u>, 95 F.3d at 198 and

---

[12]    In applying the Rooker-Feldman doctrine in this action (which arises exclusively from a New York judgment), this Court must examine the New York rules of preclusion. <u>See</u> <u>Moccio</u>, <u>supra</u>, 95 F.3d at 199-200. <u>See</u> <u>also</u> n.7, <u>supra</u>.

8

200-01 (re-litigation of "issues essential to" a §1983 action were barred, since they had been "actually and necessarily decided" in a prior Article 78 proceeding).

Accordingly, pursuant to 28 U.S.C. §1738, the New York rules of preclusion, and the Rooker-Feldman doctrine, this Court may not now properly conclude that any "rational basis" existed, and this Court respectfully has no subject matter jurisdiction to allow these issues to be re-litigated for a fourth time.  See, e.g., <u>Restqouche, Inc. v. Town of Jupiter</u>, 59 F.3d 1208, 1214 (11th Cir. 1995).

### III. THE PRIOR STATE COURT HOLDINGS ESTABLISH DEFENDANTS' "CLASS OF ONE" LIABILITY

Inasmuch as Defendants are precluded from contesting the prior State court holdings, Plaintiff is entitled to summary judgment as to Defendants' liability because the State courts already have held that: (a) Plaintiff was similarly situated to others in her neighborhood to whom similar and greater zoning relief was granted; (b) Defendants intentionally treated Plaintiff differently from those others similarly situated; and (c) there was no rational basis for Defendants' different treatment of Plaintiff.

### A. Plaintiff Was Similarly Situated

The prior State courts held that Plaintiff was "similarly situated" to others on Sammy's Beach Road to whom Defendants granted similar and greater relief, while relief of any kind was denied to Plaintiff. Consequently, <u>Bond II</u> (at 10; UF 33-43) held that Plaintiff was "indistinguishable" from other relevant applicants and could not "properly be denied."

9

Specifically, in <u>Bond I</u> (at 4 - 6; UF 11-26, 33-43), the Court held that Plaintiff was similarly situated to others in the vicinity, that she had referred Defendants to such other similar applications, and that Defendants nevertheless failed to address such similar applications -- which actions the court held "bespeaks an administrative hear no evil, see no evil posture, tending to support [Plaintiff's] allegations of discriminatory treatment." Indeed, in their unsuccessful appeal in <u>Bond III</u> (<u>see</u> UF 87), Defendants even admitted that the State court rejected as not "material" Defendants' purported distinctions of other similar matters "with respect to the nature and extent of the variance or relief involved," with "respect to impacts on environmental conditions." (<u>See</u> Defendants' Reply Brief to the Appellate Division, Second Department, in <u>Bond III</u>, dated January 21, 2000, attached as Ex. G to the Bond Aff. at 29-30).

Accordingly, Defendants and this Court are bound by this unequivocal holding that Plaintiff was similarly situated.

**B.   <u>Plaintiff Was Intentionally Treated Differently</u>**

The issue of whether Plaintiff was intentionally treated differently was central in the State court proceedings. <u>Bond I</u> explicitly remanded the matter for Defendants to provide an explanation of their different treatment of Plaintiff (UF 32, 43), and <u>Bond II</u> explicitly rejected, as not "supported by substantial evidence" and "not rational," Defendants' purported bases for their different treatment. (UF 85). Thus, it has been established that

Plaintiff was intentionally treated differently by Defendants.[13]

Moreover, Bond I even chastised Defendants for not taking "probing note of and notice of" their "prior actions," and held that "[u]nder Friesenda [v. Zoning Board of Appeals of Town of Islip, N.Y.L.J., May 15, 1995 (2d Dept.), p.35 col. 3] and the authority it cites, it is incumbent upon [Defendants] to conform [their] decision upon [Plaintiff's] application to the others [they have] granted in the same area or to explain [their] reasons in detail for reaching a different result upon [Plaintiff's] application." (Bond I at 6; Bond II at 4; UF 43)  The Court also reminded Defendants that "a decision by a Zoning Board of Appeals which neither adheres to its own precedent nor indicates its reasons for reaching a different result on essentially the same facts is arbitrary and capricious."  (Id.; see also UF 36, 42-43).

Accordingly, since Bond II (at 10; UF 78-81) found that Defendants failed to sufficiently distinguish the similar cases, and that Plaintiff was treated differently from similarly situated applicants, Defendants cannot now re-litigate that holding.

C.  **Defendants' Actions Lacked Any "Rational Basis"**

The Second Circuit has held that "[a] zoning board's decision can be considered irrational only when the board acts with 'no legitimate reason for its decision,'" and it "can only be considered arbitrary for federal constitutional purposes where ...

---

[13]    Indeed, Plaintiff specifically argued that she had been intentionally treated differently than others similarly situated. (See n.8, supra; see also UF 56-60, 75)  Thus, the intentional difference in treatment was an issue raised, litigated, and determined in Plaintiff's favor below.

11

it has no basis in fact." Harlen Associates, supra, 273 F.3d at 500-01. Consistent with Harlen, Bond II held that if Defendants' "determination is supported by substantial evidence and has a rational basis, it will not be disturbed" (Bond II at 7; UF 66) -- and then annulled Defendants' determination for a second time, since their actions were "not supported by substantial evidence in the record" and were "not rational" (Bond II at 11; UF 85).

The record clearly demonstrates that the Article 78 court in Bond I and II "review[ed] the whole record to determine whether there exist[ed] a rational basis to support the findings upon which the [Defendants'] determination [was] predicated." Purdy v. Kreisberg, 47 N.Y.2d 354 (1979); see, e.g., 300 Gramatan Ave. Associates v. State Division of Human Rights, 45 N.Y.2d 176, 182 (1978); Pell v. Board of Education, 34 N.Y.2d 222, 230 (1974); Colton v. Berman, 21 N.Y.2d 322 (1967). See also Sullivan County Harness Racing Assn. v. Glasser, 30 N.Y.2d 269, 277-78 (1972) (if "the challenged determination ha[d] a factual basis, it should [have been] sustained.")[14] Indeed, the mandated role of an Article

---

[14]    The specific factual findings in Bond I and II also clearly preclude any finding here of a "rational basis" -- meaning action having a rational relationship to the public health, safety, morals, or general welfare. See Village of Euclid v. Amblec Realty Co., 272 U.S. 365, 385 (1926). For example, Bond I and II each analyzed and rejected the various purported "rational bases" proffered by Defendants (see UF 61-62), holding instead that: (a) Defendants' actions "tend[ed] to support [Plaintiff's] assertion of discriminatory treatment of [her] application" (Bond I at 4; UF 35); (b) no support existed for Defendants' claimed detriment to "health, safety and welfare of the neighborhood or community," or for finding any "undesirable change in the neighborhood or a detriment to nearby properties" (Bond II at 10-11; UF 80-85); and (c) Defendants' actions were "arbitrary and capricious and not supported by substantial evidence" (Bond III, 272 A.D.2d at 613; UF

12

New York Court of Appeals has held that "[r]ationality is what is reviewed under <u>both</u> the substantial evidence rule and the arbitrary and capricious standard." <u>Pell</u>, <u>supra</u>, 34 N.Y.2d at 231 (emphasis added, citation omitted)  Thus, determining that Defendants acted "arbitrarily and capriciously" necessarily required a determination that no "rational basis" existed.[16]

Accordingly, since the prior State court holdings leave no question that Defendants' actions lacked any "rational basis," all the elements of Plaintiff's "class of one" claim have been established, entitling her to recovery from Defendants.

### IV. THE PRIOR STATE COURT HOLDINGS AND DISCOVERY ESTABLISH DEFENDANTS' "TRADITIONAL" AND "SELECTIVE ENFORCEMENT" LIABILITY

As with the previously discussed "class of one" theory,[17] the "traditional" and "selective enforcement" theories require that Plaintiff prove she was similarly situated to others seeking relief

---

[16]    The "arbitrary and capricious" standard also has been interpreted to mean "a willful and unreasoning action without consideration of, or in disregard of the facts, or a determination without a factual basis." <u>See</u> <u>Highland Brooks Apartments, Inc. v. White</u>, 40 A.D.2d 178 (4th Dept. 1972)  Indeed, a claim alleging arbitrary conduct -- such as Plaintiff's Article 78 below -- "should be dismissed where ... any reasonable explanation of the conduct can be found." <u>Woodlawn Veteran's Mutual Housing, Inc. v. New York Department of Housing & Community Renewal</u>, 159 Misc. 2d 639 (Sup. Ct. 1993), <u>aff'd</u>, 210 A.D.2d 149 (1st Dept. 1994).  Here, Defendants' actions were annulled three times, indicating the absence of "any reasonable explanation" of their conduct, and thus no "rational basis."

[17]    In order to prevail under § 1983, Plaintiff need only prove one theory of liability -- as she already has done with her "class of one" claim (<u>see</u> Point III, <u>supra</u>).  She is not <u>also</u> required to prove "traditional" and "selective enforcement" equal protection theories -- even though she has shown that such additional bases for Defendants' liability also exist.

14

from Defendants, and that Defendants treated her differently than those others. (Mem. Ord. at 5-6) However, unlike "class of one," these two theories do not require showing a lack of "rational basis" for Defendants' actions, but instead require Plaintiff to show Defendants had an impermissible purpose for such treatment, such as the intent to punish or inhibit Plaintiff's exercise of a constitutional right. (Id.)

## A.   Plaintiff Was Similarly Situated and Intentionally Treated Differently

For the reasons previously set forth (see Point III (A) and (B), supra), it already has been established that Plaintiff was similarly situated to others granted relief, yet Defendants intentionally treated her differently from those others.

## B.   Defendants Had An Impermissible Purpose

No genuine issue of fact exists that Defendants' actions both inhibited and punished Plaintiff's exercise of her First Amendment right to seek redress in the Courts through the Article 78 proceedings. See Dougherty v. North Hempstead Board of Zoning, 282 F.3d 83 (2d Cir. 2002).[18] Defendants' impermissible purpose is indisputable in light of their: (1) intentional contempt of Bond I's remand order of July 7, 1995; and (2) their baseless attempts to improperly force Plaintiff to withdraw her pending Article 78

---

[18]   Indeed, Defendants' actions are subject to a higher "strict scrutiny" standard (rather than a "rational basis" review). See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 313 and n.3 (1976). Thus, since Defendants' actions against Plaintiff were not narrowly tailored to meet a compelling state interest, they are liable to Plaintiff for such improper conduct. See, e.g., Leebaert v. Harrington, 332 F.3d 134, 139 (2d Cir. 2003).

litigation.

## 1.    <u>Defendants' Contempt of the Remand Order</u>

On July 7, 1995, Defendants' denial of Plaintiff's application was annulled, and the matter was remanded with instructions that Defendants schedule a hearing "with all deliberate speed." (<u>Bond I</u> at 6; UF 32)   However, Defendants ignored the order, and -- without any notice to Plaintiff -- unilaterally determined <u>not</u> to schedule a hearing unless Plaintiff first "renew[ed]" her application. (<u>See</u> Findings and Determination in Kronenberg, dated December 27, 1995 attached as Ex. I to the Bond Aff., at ¶13; UF 44-47. <u>See also</u> UF 48-55)

There is no question that Defendants: (1) received the remand decision on July 27, 1995.  (<u>See</u> facsimile from Richard DePetris, Esq. to East Hampton Town Attorney, dated July 27, 1995, attached as Ex. J to the Bond Aff.); and (2) five months later, in their December 27, 1995 "Findings and Determinations" in the separate application of Kronenberg, stated they would only rehear Bond "if the application is renewed" (Ex. I to the Bond Aff., <u>supra</u>, at ¶13).  Thus, for at least five months (<u>i.e.</u>, from July 27 through at least December 27, 1995), they chose to act in contempt of the remand order.[19]    Thus, Defendants clearly sought to "inhibit" Plaintiff's First Amendment right to seek redress in the

---

[19]    <u>See</u>, <u>e.g.</u>, <u>McCain v. Dinkins</u>, 84 N.Y.2d 216, 226 (1994) (citations omitted) (contempt exists where "a lawful judicial order expressing an unequivocal mandate" was "in effect and disobeyed," and those in contempt "had knowledge of the order, although it is not necessary that that order actually have been served upon the party").

courts, as well as to "punish" her for having successfully done so.

**2.  Defendants' Demand that Plaintiff
     Drop Her Administrative Appeal**

After Plaintiff filed her first Article 78 proceeding, but prior to any briefing, she sought to resolve the litigation by proposing to only increase her dwelling by half of the square footage of the existing dwelling (as compared to the initial proposal which more than doubled the size of the existing dwelling).  (See letter from John J. Bennett, Esq. to Richard DePetris, Esq., dated October 25, 1994, attached as Ex. K to the Bond Aff.)  Rather than discuss any resolution with Plaintiff (as Defendants did with other applicants, including applicants in Plaintiff's neighborhood), Defendants told Plaintiff she must first drop her Article 78 proceeding.  That position was clearly set forth at a January 28, 1995 meeting between Defendants' then-counsel, Richard DePetris, Esq. ("DePetris"), and Plaintiff, her now deceased husband, and Plaintiff's then-counsel, John J. Bennett, Esq. ("Bennett"), and is not subject to any material dispute. (See UF 27-31)

Specifically, at his deposition in this case, Bennett testified concerning: (1) forwarding Plaintiff's settlement proposal (Ex. K to the Bond Aff., supra) to DePetris (see Bennett Deposition Transcript, dated December 1, 2003, excerpts attached as Ex. L to the Bond Aff., at 10); (2) attending the January 28, 1995 meeting in DePetris' office with DePetris, Plaintiff, and her husband (id at 13); (3) DePetris telling Plaintiff she first "would have to drop the Article 78 proceeding in order to -- for the Board

17

to entertain any settlement discussions." (id. at 14); and (4) his not being able to "figure out why [Defendants] would have denied [Plaintiff's] application other than ... a mean spirited denial,"[20] which meant to Bennett "really reaching to hurt somebody" (id. at 58, 60).

Similarly, Plaintiff testified at her deposition that: (1) she had sent to DePetris a "50% proposal" (Ex. K to the Bond Aff., supra) to "get this resolved," and had a meeting set up with DePetris (see Beverly Bond Deposition Transcript, dated December 1, 2003, excerpts attached as Ex. M to the Bond Aff., at 96); (2) at the meeting, she was "met with we will not negotiate unless you drop your Article 78," "this is the way the Town operates," "if you want to negotiate, you must drop your Article 78" (id. at 97, 116); (3) DePetris did not address the specifics of the settlement proposal, but instead, stated that "the Town will not negotiate when lawsuits are pending, drop your Article 78 or we won't talk" (id. at 116); and (4) consequently, Plaintiff felt she "was being retaliated against by the Town for having brought an Article 78" (id. at 116).

In response to such clear and unequivocal testimony, Defendants offered only the "non-recollection" of DePetris. Specifically, DePetris testified to having only a "vague recollection" that Plaintiff even "submitted a settlement

---

[20]   Additionally, in response to Defendants' counsel's question as to whether Plaintiff was treated disparately by Defendants', he stated: "Absolutely, that was the whole gravamen of the case [Bond I]". (Id. at 17)

proposal." (See DePetris Deposition Transcript, dated October 1, 2003 excerpts attached as Ex. N to the Bond Aff., at 8) Additionally, in his testimony concerning Plaintiff's settlement proposal, DePetris admitted that he did not "normally get involved in settlement discussions," and provided his claimed understanding of the "normal" procedures concerning settlement proposals (id. at 13, 44). Significantly, he testified that he had "no recollection" of the meeting with Plaintiff, her now deceased husband, and Plaintiff's counsel -- although he stated he was "not saying that it didn't happen." (Id. at 40-41) Nevertheless, he conveniently claims -- regarding a meeting of which he has "no recollection," and a settlement proposal of which he had only a "vague recollection" -- that he never said that "unless the Bonds dropped their Article 78 proceeding, there would be no settlement of the matter" (id. at 42). However, such convenient "non-recollections" do not create a genuine issue of fact -- particularly in light of the unequivocal testimony of the remaining two participants at the meeting and supporting documentary evidence.[21]

Accordingly, there can be no genuine issue of fact that Defendants improperly inhibited and punished Plaintiff for the

---

[21]  Notably, Plaintiff provided uncontroverted testimony that: (a) prior to the meeting with Mr. DePetris, she read an article "concerning the Town negotiating with other persons while in litigation"; (b) as a result of the meeting and DePetris' statements to Plaintiff and her then-counsel, Plaintiff cut out the article; and (c) she mailed that article to Bennett, with a short note stating that "[c]learly the Board 'negotiates' while a lawsuit is pending." (See Ex. M to the Bond Aff., supra, at 118, 120; see also East Hampton Star article, dated January 26, 1995 (with postmarked envelope), attached as Ex. O to the Bond Aff.).

exercise of her constitutional rights, and thus also are liable under both the "traditional" and "selective enforcement" equal protection theories.

## CONCLUSION

For the reasons set forth, Plaintiff's motion for summary judgment as to Defendants' liability should be granted, and a hearing on Plaintiff's damages under §1983 should be scheduled.

Dated:    New York, New York
          June 4, 2004

Respectfully submitted,

STUMPP & BOND, LLP

Adam M. Bond (AB 0247)

Attorneys for Plaintiff
  Beverly S. Bond
170 Broadway, Suite 608
New York, New York  10038
Telephone:  (212) 406-2300

Of Counsel:

Gary D. Stumpp

20

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

      Paula S. Ball, being duly sworn, deposes and says:

      I am not a party to this action and am over 18 years of age.

      On June 4, 2004, I served Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Plaintiff's Statement of Undisputed Material Facts, and the Affidavit of Adam M. Bond in Support of Plaintiff's Motion for Summary Judgment, by delivering true copies thereof to Federal Express within the City and State of New York, and addressed as follows:

                Gary N. Weintraub, Esq.
                Caputi, Weintraub & Neary
                50 Elm Street
                Huntington, N.Y.   11743

                              _____
                              PAULA S. BALL

Sworn to before me this
24 day of June, 2004

_____
Notary Public

GARY D. STUMPP
Notary Public, State of New York
No. 02ST4667291
Qualified in New York County
Commission Expires April 30, 2006